# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS          SBN 108325
BEN J. MEISELAS          SBN 277412
JEFFREY KWATINETZ        SBN 158932

Attorneys for Plaintiff, MICHAEL OPPENHEIM, individually and as the representative of a class of similarly-situated persons

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL OPPENHEIM, individually and as the representative of a class of similarly-situated persons; | Case No.: 2:18-cv-3610 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | 1. **FRAUD**<br>2. **FRAUD—NEGLIGENT MISREPRESENTATION**<br>3. **BREACH OF IMPLIED CONTRACT**<br>4. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>5. **BREACH OF IMPLIED WARRANTY**<br>6. **PRODUCT LIABILITY**<br>7. **UNJUST ENRICHMENT** |
| MERCEDES-BENZ USA, LLC, a Delaware corporation. | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Plaintiff Michael Oppenheim ("Plaintiff or "Mr. Oppenheim"), individually and as the representative of a class of similarly-situated persons, alleges as follows:

## INTRODUCTION

1.      In an era of claims of Fake News, it appears Mercedes-Benz USA, LLC (hereafter referred to as "Mercedes-Benz" or the "Defendant") has perfected the art of the Fake Recall.  While Mercedes-Benz likes to brag of its meticulous and superior German engineering, uses the motto "The Best or Nothing," and has a mission statement to "Lead in the Innovation and Delivery of the Brand's Customer Experience through Amazing People and Amazing Service," the reality for its customers is much different.  Mercedes-Benz has exhibited a deceptive pattern with regard its recalls, including the massive Takata airbag recall.  In fact, Consumer Reports in November 2017 reported that of 19 automakers in the United States, Mercedes-Benz appears to be the **worst** when it comes to fixing its vehicles recalled due to its use of deadly airbags having only completed **TWO PERCENT** of such recalls.  The next worst automaker completed 23 percent at number 18 with the best record being 79 percent in completed recalls by Tesla.  Far from the best, last place Mercedes-Benz has differentiated itself by its pattern of announcing a recall and then doing barely anything. Its customers are left to fend for themselves in their Mercedes-Benz automobile deathtraps and left unsettled in their knowledge that their vehicles may be highly dangerous.

2.      Mercedes-Benz issued a recall on or about October 6, 2017 of approximately 495,290 vehicles in the United States for insufficient electrical grounding in steering wheel components that could cause inadvertent deployment of the driver airbag leading to injuries and crashes (the "Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall").  To be clear, this action is NOT seeking damages or remedies pursuant to the Takata recall.  The action is focused entirely on the recall referenced in this paragraph for the 495,290 vehicles at issue.

3.      What is relevant is that the Mercedes-Benz Electrical Grounding/Airbag Deployment Recall is on the heels of Mercedes-Benz previously notifying consumers, along with massive associated publicity, about what is known as the Takata airbag recall.  The Takata airbag recall is one of the largest airbag recalls in history and involves Takata airbags in certain Mercedes Benz vehicles (as well as other types of vehicles), that could explode during airbag deployment which

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

could result in metal fragments striking the front occupants, possibly causing serious injury or death. Plaintiff has also strangely received recall notifications of the Takata recall and has been made aware by Mercedes-Benz that it is still unable to replace the parts pursuant to that recall.  As a result of Plaintiff's knowledge of this previous recall, Defendant's insufficient track record in satisfying the recall, and/or of the grave danger involved, Plaintiff reasonably perceives great danger in the recall at issue given it also involves airbags.

4.     The Mercedes-Benz Electrical Grounding/Airbag Deployment Recall involves, in and of itself, premature deployment of an airbag, possibly causing grievous injury or death.  In addition to premature deployment of an airbag causing an accident, Plaintiff also reasonably perceives that the airbag itself could be defective and result in grievous injury or death causing an unfortunate double danger for Plaintiff and similarly situated consumers.

5.     Plaintiff brings this class action on behalf of all persons in the United States who have purchased or leased the following Mercedes-Benz vehicles: Model Year ("MY") 2014-2017 B-Class electric, MY 2012-2018 C-Class, MY 2012-2017 E-Class, MY 2014-2018 CLA, MY 2015-2018 GLA, MY 2013-2018 GLK, which are subject to the Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall (hereinafter the "Class").

6.     Mercedes-Benz recall notices, despite warning of potential grave consequences to Plaintiff and the Class should their cars not be repaired, set dates for replacement many weeks and months after the recall notices were received.  Plaintiff was given a date in December for replacement of the faulty parts subject to the recall only to be notified that Defendant had to postpone replacement due to a lack of parts.  Plaintiff was told he would soon get a new date to effectuate the recall.  As of late April 2018, Plaintiff is informed that Mercedes-Benz is still unable to provide a remedy for the Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall because of lack of the parts and ability to satisfy this recall.

7.     Despite requests for waiver of lease fees, replacement cars, and other means of compensation during the period that the cars were unable to be repaired, Mercedes-Benz has refused to provide Plaintiff such compensation.  This lawsuit seeks this compensation on behalf of Plaintiff and the proposed Class.

8.     Worse still, Plaintiff and the Class continue to be informed that parts cannot be provided in the time frame promised by Mercedes-Benz and subsequent to its "recall" letters in updated letters that it would now be many more months until the repairs could be made.  No date has been set since first receiving notice of the Mercedes-Benz Electrical Grounding/ Premature Airbag Deployment Recall in November.  Despite the inability to repair these faulty vehicles with insufficient electrical grounding issues, Mercedes-Benz, as in the Takata recall, refuses to compensate Plaintiff and the Class for replacement cars, lease agreements, or time without use of the cars.

9.     Information given to Plaintiff and the Class was worrisome.  Mercedes-Benz authorized dealerships gave various explanations at different times for the added delay in repair, often contradicted the recall letters provided to consumers, insisting there was no actual danger, could not give a reasonable estimate how long the parts would not be available, and even indicated that if Plaintiff paid separately for the replacement that they could be provided.  Subsequent communications both oral and written were evasive and Plaintiff was given the runaround.  Plaintiff was told that, in fact, no reliable date could be given for when the repairs could be made.  The exact nature of the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall itself remains confusing and ambiguous since letters refer to defects with insufficient electrical grounding but Plaintiff also had been made aware of the previous recall through separate communications from Mercedes-Benz regarding faulty airbags and inflators and the delay and danger in fixing these deathtraps.  Plaintiff and the Class are left wondering if Mercedes-Benz even knows what the actual problems are with their expensive luxury vehicles and what the true dangers are or if Mercedes-Benz even intends to ever effectuate its "Fake Recall."

10.     As noted above, requests for waiver of lease payments or replacement vehicles during the period the cars could not be repaired were denied.  Mercedes-Benz authorized dealers told Plaintiff to contact the manufacturer Mercedes-Benz, that it was the manufacturer's decision; Mercedes Benz USA told Plaintiff to contact his authorized dealerships, and Plaintiff was given the run-around in attempts to resolve his situation.  The risks to Plaintiff and the Class are indeed grave and Defendant admits to such in its various recall communications.  In the Mercedes-Benz Electrical

- 4 -

Grounding/Premature Airbag Deployment Recall, Defendant makes plaintiff aware the insufficient grounding could "**lead to an inadvertent deployment of the driver airbag.**" Based on information and belief, Mercedes-Benz airbags have already been blamed for the deaths of at least 18 passengers worldwide. Being told he could be subject to inadvertent airbag deployment is quite scary and unsettling to Plaintiff.

11. The deplorable actions of Mercedes-Benz make it clear that its "recalls" are hardly that. Instead it is again a sham "recall" designed to inoculate Defendant from liability when in fact, the recall of these dangerous vehicles is a delay designed to allow Defendant to continue to profit from their defective and dangerous cars while distressed and confused consumers are left without remedy.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over this action under the *Class Action Fairness Act*, 28, U.S.C. § 1332(d), because this is a class action in which: (1) there are more than a one hundred and fifty (150) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate. In fact, damages in the United States alone may exceed 5 Billion dollars.

13. In addition, this Court has supplemental jurisdiction over Plaintiff's claims under 28, U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff and Class Members' claims occurred in the Central District of California as Defendant: (a) is authorized to conduct business in this District and has intentionally availed itself to the laws within this District; (b) currently does substantial business in this District; and (c) is subject to personal jurisdiction in this District.

## PARTIES

15. At all times relevant to this action, Plaintiff was a resident of Los Angeles County, California, and a citizen of the State of California.

16.     In 2017, Plaintiff leased a Mercedes-Benz model year 2017, model E400A, VIN #WDDKK6FFXHF361834, which was subject to the Mercedes-Benz Electrical Grounding/Airbag Deployment Recall, as explained in a November 2017 letter to Plaintiff on behalf of Defendant, for defects related to insufficiently grounded components that could lead to inadvertent deployment of the airbags at issue.  In a communication from Defendant to Plaintiff, a date was scheduled for December 2017 for Mercedes-Benz or an authorized Mercedes-Benz dealer to remedy the dangerous defect.  Plaintiff was then informed in a second letter that the time to repair needed might actually be far longer and no new date was set and still has remained a mystery when, if ever, Mercedes-Benz intends to satisfy this recall. In addition to a down payment of $2,594.52, Plaintiff is required to pay $769.71 per month in lease payments for his Mercedes-Benz vehicle while he waits for the car to be made safe.

17.     At all times relevant to this action, Defendant Mercedes-Benz is a Delaware limited liability company, with its headquarters in the States of Georgia and New Jersey, and Customer Assistance Center located in the State of New Jersey. Plaintiff is informed and believes that Defendant provides sale and lease for its cars, ranging in total contractual prices from $20,000.00 to many tens of thousands of dollars.  Upon information and belief, these Class Members are residents and citizens of numerous States.

## BACKGROUND

18.     Mercedes-Benz sells millions of cars in the United States.   Starting in 2014, Mercedes-Benz has sold more than 350,000 cars per year in the United States.

19.     In or around 2010, Mercedes-Benz starting using the motto "The Best or Nothing" when advertising its cars.  On the website of Mercedes-Benz, the automaker declares "our promise to deliver 'The Best or Nothing'." Joachim Schmidt, executive vice president-sales and marketing for the brand at its global base in Stuttgart, said the automaker has a long history of bringing new technology innovations to market. "Based on this tradition, our customers expect nothing less than technological leadership," he said. "For us, that means we want to deliver the very best in all areas – be that in research and development, production, sales, service and aftermarket business or in

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

purchasing." The brand claim is reflected in brand's core values of perfection, fascination and responsibility and is also a part of corporate culture, Mr. Schmidt said.

20.     Based on information and belief, Mercedes-Benz sells the models subject to their sham "recall" in each and every state of the United States.

21.     Mercedes-Benz also promises its cars will be "Fun to drive; A Pleasure to own."

22.     Indeed, Plaintiff and the Class have not found Mercedes-Benz vehicles to be fun to drive, a pleasure to own, and certainly have not lived up to their promise of being the very best in production, safety, service, among other false promises.  These dangerous cars are far from being "The Best or Nothing" and Plaintiff is left to wonder if the recall will ever be addressed.  Given Mercedes-Benz established record of not fulfilling its obligations in serious recalls Plaintiff and the Class are left to worry what the true intent is of Defendant in maintaining safe vehicles.

23.     Black's Law dictionary defines a "Recall" as "Removal of a contaminated or defective good by its manufacturer, either voluntarily or when forced by a watchdog agency."  In other common definitions of "recall" the defective goods are to be replaced; merely informing consumers that their goods are defective is not sufficient.  Defendant has not met the definition of a recall since it refuses to remove the defective goods it manufactured since it has not timely, if at all, provided for their removal and they have frustrated consumers ability to have their admittedly defected vehicles removed, fixed or replaced.

24.     Defendant has misled Plaintiff and the Class to availability of parts and its ability to remedy its dangerous and unfit vehicles.  Defendant has miscommunicated facts regarding the vehicles and the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall, has given false and misleading dates when such vehicles would be repaired, has disseminated false information regarding the recall of its vehicles, and has continued to charge lease payments for lessees and caused Plaintiff and the Class to continue to be damaged by Defendants abhorrent behavior and actions.

25.     While other car makers face similar issues in the United States regarding the defects at surrounding their airbags, Consumer Reports noted in November 2017 that Mercedes-Benz is unique in their shockingly low rate of recalls completed.  In a review of 19 automakers experiencing

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

airbag inflator recalls, the other 18 companies range from having 23% to 79% of their recalls completed. ***Dead last at 19th is Mercedes-Benz which has completed only 2% of their recalls. Far from the "Best or Nothing."*** Plaintiff rightfully assumes based on Defendant's established behavior and conduct when it comes to recalls that the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall is another "sham recall" and will not be satisfied especially given that SIX MONTHS AFTER LEARNING OF THE RECALL there are still no efforts to fix his car's dangerous defects or even a proposed date to do so.

26. The clear purpose of a "recall" is to remedy defective and dangerous products so they can be returned to the consumer in the condition intended and promised when bought or leased. If the Defendant is unable to effectuate such recall, then as between Plaintiff, the Class and Defendant it would be inconsistent and contrary to law, good faith and common notions of fair dealing, and morality for the Plaintiff and Class to bear the harm and damages caused by Defendant's dangerous and defective products and Defendant's inability to rectify and repair such products.

//

//

//

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this class action on behalf of himself and all others situated as Class members pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

28. Plaintiff seeks to represent a "Class" defined as follows:

**All United States residents who have purchased or leased Defendants vehicles** including the following Mercedes-Benz vehicles: Model Year ("MY") 2014-2017 B-Class electric, MY 2012-2018 C-Class, MY 2012-2017 E-Class, MY 2014-2018 CLA, MY 2015-2018 GLA, MY 2013-2018 GLK which were subject to the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall.

29. Plaintiff seeks to represent a "California subclass" defined as follows:

1  **All California residents who purchased or leased Defendants vehicles** including the following

2  Mercedes-Benz vehicles: Model Year ("MY") 2014-2017 B-Class electric, MY 2012-2018 C-Class,

3  MY 2012-2017 E-Class, MY 2014-2018 CLA, MY 2015-2018 GLA, MY 2013-2018 GLK which

4  were subject to the Mercedes-Benz Electrical Grounding/Premature Airbag Deployment Recall .

5       30.   Plaintiff is a member of the Class that he seeks to represent.  Plaintiff is a United

6  States resident who purchased and/or leased Defendant's vehicles.

7       31.   Plaintiff is a member of the Subclass that he seeks to represent.  Plaintiff is a

8  California resident and citizen who purchased and/or leased Defendant's vehicles.

9       32.   This action satisfies the predominance, typicality, numerosity, superiority, and

10  adequacy requirements of these provisions.

11       (a) **Numerosity**: The plaintiff class is so numerous that the individual joinder of all members

12       is impractical under the circumstances of this case. While the exact number of Class

13       Members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and based

14       thereon alleges, that more than 495,000 Plaintiffs have been affected by Defendant's actions.

15       (b) **Commonality**: Common questions of law and fact exist as to all members of the plaintiff

16       class and predominate over any questions that affect only individual members of the class.

17       The common questions of law and fact include, but are not limited to:

18            (i) Whether Defendant made false representations regarding the safety, quality and

19            consumer enjoyment of their vehicles;

20            (ii) If so, whether Defendant knew they were false or were reckless as to their

21            veracity at the time they were made;

22            (iii) Whether Defendant negligently and/or purposely misrepresented various facts

23            regarding its recall of vehicles and what the true intent of Defendant is regarding

24            satisfying recalls of its dangerous vehicles;

25            (iv) Whether Defendant breached any implied contractual obligations to purchasers

26            and lessees;

27            (v) Whether the defects in the vehicles "recalled" by Defendant render them unfit for

28            their intended use;

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

(vi) Whether Defendant's actions have caused damages, and the extent of such damages, to Plaintiff and members of the class;

(vii) Whether Defendant should be required to compensate Plaintiff and members of the Class for past, present, and/or future lease payments while the subject vehicles are subject to the Mercedes-Benz Electrical Grounding/Airbag Deployment Recall;

(viii) Whether Defendant should be required to accept return of its vehicles and make Plaintiff whole, or to furnish replacement and or rental vehicles to Plaintiff and members of the Class during the period for which he is denied the use of their defective vehicles due to the inherent dangers therein;

(ix) Whether Defendant has actually met its requirement to recall its defective goods or whether it even intends to; and

(x) Whether Defendant should be subject to punitive damages.

(c) **Typicality**: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the members of the class sustained damages arising out of Defendant's wrongful and fraudulent conduct as alleged herein.

(d) **Adequacy**: Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff has no interest that is adverse to the interests of the other Class Members.

(e) **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

(f) **Public Policy Considerations**: When a company or individual engages in fraudulent conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party.  Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court.  There is a well-defined community of interest in the questions of law or fact affecting the Plaintiff Class in that the legal questions of fraud, breach of contract, and other causes of action, are common to the Class Members.  The factual questions relating to Defendant's wrongful conduct and its ill-gotten gains are also common to the Class Members.

## FIRST CAUSE OF ACTION

### FRAUD – INTENTIONAL MISREPRESENTATION

*(By Plaintiff Individually and On Behalf of All Class Members*

*Against Defendant)*

33.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

34.    As stated above, Defendant made numerous false representations regarding its vehicles.

35.    Defendant represented, among other things, that (1) its vehicles were safe, fun to own, and best in class in quality; (2) that its service would be of the best quality; and (3) that its defective and deadly vehicles would be "recalled" and fixed and subject dangerous products would be serviced in a world class manner according to promises and purposely misleading statements.

36.    The representations made by Defendant proved to be completely false and misleading.

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

37.     Defendant has, through traditional advertising and through social media outlets, promoted the safety and quality of its vehicles and service of such vehicles. Defendant knew that the representations in its communications regarding the sale and lease of its vehicles were false; or at the minimum, Defendants made the representation with reckless disregard for the truth.

38.     Based on the representations by Defendant, Plaintiff and the Class purchased and or leased its vehicles.

39.     Plaintiff and Class members have each expended many thousands of dollars on Defendant's vehicles. Additionally, Plaintiff experienced significant emotional pain and suffering from being misled regarding the safety of its vehicles and the manner of recalling its dangerous and self-described potentially deadly vehicles.

40.     Plaintiff specifically purchased or leased Defendant's vehicles in reliance on Defendant's representations. Furthermore, Plaintiff's emotional pain stems from their experiences in being forced to drive dangerous vehicles and in being misled by Defendant regarding their safety and the ability to have their vehicles repaired and made to be safe.

**SECOND CAUSE OF ACTION**

**FRAUD - NEGLIGENT MISREPRESENTATION**

*(By Plaintiff Individually and On Behalf of All Class Members*

*Against Defendant)*

41.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

42.     Defendant made numerous false representations regarding the safety of its vehicles and the ability and desire to have the cars recalled and fixed.

43.     Defendant represented, among other things, that (1) its vehicles were safe, fun to own, and best in class in quality; (2) that its service would be of the best quality; and (3) that its defective and dangerous vehicles would be "recalled" and fixed and defective products would be serviced in a world class manner.

44.     Representations made by Defendant proved to be false and/or misleading.

45.     Defendant has, through advertising and communications promoted its vehicles vigorously and promised to recall and fix its vehicles. Although Defendant may have honestly believed that these representations were true, based on the lack of any reasonable ability to repair its vehicles and satisfy its recall, Defendant had no reasonable grounds for believing the representations were true when they made it.

46.     Based on the representations by Defendant, Plaintiff and the Class purchased and or leased their vehicles.

47.     Plaintiff and the Class expended thousands of dollars on their vehicles. Defendant made further false promises regarding its ability to recall and fix these dangerous vehicles. Additionally, Plaintiff and the Class experienced significant emotional pain and suffering from being left with dangerous vehicles.

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED CONTRACT

### (By Plaintiff Individually and On Behalf of All Class Members

### Against Defendant)

48.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

49.     Plaintiff entered into an implied contract with Defendant to provide a luxury, quality and safe vehicle in exchange for money.  Defendant advertised and marketed its vehicles to Plaintiff and the Class promising a superior quality and experience.  Plaintiff provided payment in consideration for Defendant's promises.

50.     Instead, Defendant breached the contract by refusing to actually recall its defective and dangerous vehicles and to provide best in class service and to provide a fun, stress free and enjoyable vehicle and driving experience, and when such promises were made regarding recall of such dangerous vehicles these promises were broken.

51.     Plaintiff and the Class expended thousands of dollars on these dangerous vehicles and have been damaged by Defendant's wrongful conduct.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
*(By Plaintiff Individually and On Behalf of All Class Members Against Defendant)*

52.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

53.   Plaintiff and the Class purchased and/or leased Defendant's products reasonably expecting a luxury, quality and safe vehicle in exchange for money. Plaintiff and the Class provided payment in consideration for Defendant's promises.

54.   As shown above, Defendant engaged in deceptive behavior which clearly interfered with the rights of Plaintiff and the Class to receive the benefits of their purchases.

55.   Plaintiff and the Class expended thousands of dollars on the dangerous vehicles.

56.   As between Defendant, Plaintiff, and the Class, it is against public policy and common notions of good faith and fair dealing for Plaintiff and the Class to bear the damages that result from Defendant's actions and behavior.

**FIFTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANY**

*(By Plaintiff Individually and On Behalf of All Class Members Against Defendant)*

57.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

58.   At the time Defendant marketed, sold and distributed its vehicles for use by Plaintiff and Class members, Defendant knew of the use for which its vehicles were intended and impliedly warranted its vehicles to be of a certain quality and safety.

59.   Defendant embarked on and carried out a common scheme of marketing and selling its vehicles by falsely and deceptively representing that its vehicles were safe and without defects, and that if vehicles were shown to be unsafe that they would be repaired and fixed.

60.   Said representations and warranties are false, misleading, and inaccurate in that recalled vehicles are unsafe and unreasonably dangerous due to its defects.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

61.     Defendant's vehicles, when sold and leased, were defective, dangerous, unfit for ordinary use, and unfit for the use for which they were sold.

62.     Defendant's vehicles contain a defect and danger which renders them useless or renders their use inconvenient and imperfect such that Plaintiff and the Class Members would not have purchased or leased the vehicles if they had known of the defect and dangers.

63.     The damages in question arose from the reasonably anticipated use of the vehicles in question.

64.     Defendant breached the implied warranties or merchantability and fitness for a particular purpose and benefit when the vehicles were sold or leased to Plaintiff and the Class in that they are dangerous and unsafe.

65.     As a direct and proximate cause of Defendant's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff and the Class have sustained and will continue to sustain the loss of use of their vehicles, severe emotional distress, economic losses and consequential damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

## SIXTH CAUSE OF ACTION

### PRODUCT LIABILITY

*(By Plaintiff Individually and On Behalf of All Class Members*

*Against Defendant)*

66.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

67.     At all times material hereto, Defendant was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing Mercedes-Benz vehicles in the United States, including but not limited to, the vehicles subject to the "recalled" vehicles.

68.     Defendant knew and expected its vehicles to eventually be sold by purchasers, lessees, or eventual owners of the vehicles including to Plaintiff; consequently, Plaintiff and Class Members were expected users of the vehicles Defendant manufactured.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

69.     Subject vehicles reached Plaintiff and the Class without substantial change in their conditions from time of completion of manufacture by Defendant.

70.     The dangerous condition of Defendant's vehicles could not have been contemplated by any reasonable person expected to operate such vehicles and therefore presented an unreasonably dangerous situation for expected users.

71.     As a direct and proximate cause of Defendant's design, manufacture, assembly, marketing and sales of its vehicles, Plaintiff and the Class have sustained and will continue to sustain the loss of use of their vehicles, severe emotional distress, economic losses and consequential damages, and are therefore entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Defendant is liable to Plaintiff and the Class for breach of duty to design, manufacture, assemble, market and sell and lease a safe product, fit for its reasonably intended use.

72.     Defendant has admitted its vehicles are defective and dangerous to the degree that they can malfunction "**possibly causing serious injury or death" and/or "inadvertent deployment of the driver airbag…may cause a risk of injury to the driver and may increase the risk of a crash."**

## SEVENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### *(By Plaintiff Individually and On Behalf of All Class Members*

### *Against Defendant)*

73.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

74.     Plaintiff and the Class were expected to drive unreasonably dangerous and defective recalled vehicles that could malfunction "**possibly causing serious injury or death," or result in "inadvertent deployment of the driver airbag ...[and] may cause a risk of injury to the driver and may increase the risk of a crash."** while Defendant unjustly reaped profits.

75.     Defendant unjustly deprived Plaintiff and the Class of a safe and high-quality

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

driving experience, as well as of monies that Plaintiff and the Class continued to pay to drive defective and unreasonably dangerous and defective recalled vehicles provided by Defendant.

76.     Defendant's retention of this ill-gotten revenue is unjust and inequitable because Defendant engaged in wrongful conduct to entice Plaintiff and the Class to purchase and continue to drive the unreasonably dangerous and defective recalled vehicles in question.  Defendant received a benefit for its unreasonably dangerous and defective recalled vehicles that Plaintiff and the Class did not bargain for.

77.     Defendant was aware of the benefit it was receiving as a result of its wrongful conduct and has enjoyed the benefits of its financial gains and at the expense of Plaintiff and Class members.  As between Plaintiff, members of the Class and Defendant, it is unjust for innocent consumers who fulfilled their end of the bargain to pay for the mistakes of Defendant who failed to provide Plaintiff and the Class what they paid for and to fulfill reasonably expected promises.

78.     Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and the Class was inequitable and unjust.  Plaintiff and the Class have no adequate remedy at law and are entitled to seek restitution and all other relief as deemed just and equitable, including but not limited to, an order requiring Defendant to disgorge all profits, benefits, and other compensation obtained by virtue of its wrongful conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on his own behalf, and on behalf of the Class Members and Sub-Class Members, as well as the general public, prays for judgment as follows:

**CLASS CERTIFICATION**:

1.     For an order certifying the proposed Class;

2.     That Plaintiff be appointed as the representative of the Class; and

3.     That counsel for Plaintiff be appointed as Class Counsel.

**AS TO ALL CAUSES OF ACTION**:

1.     For all actual, consequential, and incidental losses and damages, according to proof;

2.     For punitive damages, where permitted by law;

- 17 -

3.  For attorneys' fees, where permitted by law;

4.  For costs and suit herein incurred; and

5.  For such other and further relief as the Court may deem just and proper.

DATED:  April 30, 2018                    **GERAGOS & GERAGOS, APC**


                                          By:   /s/ MARK J. GERAGOS
                                                MARK J. GERAGOS
                                                BEN J. MEISELAS
                                                JEFFREY KWATINETZ
                                                Attorneys for Plaintiff Michael Oppenheim,
                                                individually and as the representative of a class
                                                of similarly-situated persons

**DEMAND FOR JURY TRIAL**

Plaintiff Michael Oppenheim, individually and as the representative of a class of similarly-situated persons, hereby demands a jury trial.


DATED:  April 30, 2018                    **GERAGOS & GERAGOS, APC**


                                          By:   /s/ MARK J. GERAGOS
                                                MARK J. GERAGOS
                                                BEN J. MEISELAS
                                                JEFFREY KWATINETZ
                                                Attorneys for Plaintiff Michael Oppenheim,
                                                individually and as the representative of a class
                                                of similarly-situated persons